**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF NEW JERSEY ex rel. RESOLUTION NJ LLC,<br><br>Plaintiffs,<br><br>v.<br><br>RIVERSIDE MEDICAL GROUP, P.C.,<br><br>Defendant. | Civil Action No. 22-04165 (SDW) (LDW)<br><br>**OPINION**<br><br>September 6, 2024 |

**WIGENTON**, District Judge.

Before this Court is Riverside Medical Group, P.C.'s Motion to Dismiss, (D.E. 48), Plaintiff Resolution NJ LLC's First Amended Complaint[1] ((D.E. 14 "FAC"), because: (a) it does not satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b); (b) it is barred by the False Claims Act's first-to-file and public disclosure limitations; (c) Resolution NJ LLC is not an original source as required by the False Claims Act; and (d) the claims are unconstitutional. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendant's motion is **GRANTED in part** because Resolution NJ LLC is not an original source, and **DENIED in part** because the FAC does satisfy the pleadings standard, the claims are not barred by the False Claims Act's limitations, and the claims are not unconstitutional.

---

[1] The United States declined to intervene in this matter.

1

I. **BACKGROUND**

    a. *Factual History*

This case involves a *qui tam* claim under the False Claims Act ("FCA"), as well as claims under the New Jersey False Claims Act, N.J.S.A. § 2A:32C-3, ("NJFCA"), arising out of allegedly fraudulent claims presented by Riverside Medical Group, P.C. ("Riverside") to Centers for Medicare & Medicaid Services ("CMS") for payment of funds. (*See generally* D.E. 14.)

Riverside advertises itself as an integrated health system with clinicians practicing in primary care, urgent care, ambulatory surgery, imaging, and more than 25 specialties. (D.E. 14 at 29.) In 2020, in response to the global health pandemic, Riverside operated "COVID Command Testing Centers" at three locations in New Jersey: Secaucus, Medford, and Hoboken. (*Id.*) At these centers, patients who experienced COVID-like symptoms could be evaluated by a Riverside provider and tested. In practice, patients were permitted to fill out a health screening by telephone and schedule an appointment for drive-thru testing.

To address the influx of patient care and testing, CMS directed healthcare providers to use CPT Code 99211 to bill for a COVID-19 symptom and exposure assessment and specimen collection. Plaintiff, Resolution NJ LLC is a Delaware domestic limited liability company that was formed shortly before the commencement of this lawsuit. (*See* D.E. 14 ¶18; D.E. 16 at 15.) The only member of Resolution NJ LLC ("Relator") is an anonymous physician who was employed by Riverside at the time of the alleged fraudulent conduct. (*Id.*) Relator alleges that during the physician's tenure, he met with a number of patients and discovered that Riverside had billed drive-thru test patients at higher than appropriate CPT Codes for payment. (*Id.* at 30.) In many instances, Relator asserts the patients were asymptomatic and sought testing for entrance to school or the workplace, to enable travel, or as required prior to undergoing a medical procedure.

Relator also alleges that "in the overwhelming majority of known examples, the patient was not provided with any meaningful examination and, further, did not exit [their car.]" (*Id*.) Riverside is alleged to have falsified patient records (e.g., patient progress notes) in an effort to conceal that examinations were not being performed. Riverside allegedly submitted falsified records to CMS and the Health Resources & Services Administration (HRSA) Program for payment and, to date, has not refunded government healthcare programs any amounts it received for payments based on falsified records. (*Id*. at 34.)

      b. *Procedural History*

Relator initiated this lawsuit on June 17, 2022. On May 31, 2023, Relator filed the FAC which includes seven counts: Counts I–III- Violation of the FCA; Count IV- Violation of the NJFCA; Count V- Unjust Enrichment; Count VI- Payment by Mistake; and Count VII- Retaliation. Riverside filed a motion to dismiss on July 12, 2023 which was administratively terminated due to case reassignment.[2] The instant motion was filed on February 5, 2024. Relator does not oppose the dismissal of Counts V, VI, and VII. (D.E. 26 at 3.) Briefing was timely filed.

**II.   STANDARD OF REVIEW**

When considering whether a motion to dismiss is viable, this Court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 23 (3d Cir. 2008) (citation omitted). For a complaint to be adequate, it must be "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing Fed. R.

---

[2] This matter was originally assigned to Judge McNulty and was later reassigned to Judge Salas. By Text Order signed on February 1, 2024, Judge Salas terminated all pending motions and deemed them re-filed as of that date. The matter was reassigned to this Court on May 22, 2024.

3

Civ. P. 8(a)(2)). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*; *see Phillips*, 515 F.3d at 232. If the "well pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2). *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169–70 (3d Cir. 2013).

### III. DISCUSSION

The FCA prohibits the submission of false or fraudulent claims for payment to the United States and authorizes *qui tam* actions, by which private individuals may bring a lawsuit on behalf of the government in exchange for the right to retain a portion of any resulting damages award. *See Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 131 S. Ct. 1885, 179 L.Ed.2d 825 (2011). Under the FCA any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" is civilly liable to the United States. 31 U.S.C. § 3729(a)(1)(A). The FCA also makes liable anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement material to" a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B). "Parties may sue under the False Claims Act in two ways. First, the Attorney General may sue anyone who violates the Act. 31 U.S.C. § 3730(a). Second, any person may bring a [*qui tam*] suit in the Government's name. *Id.* § 3730(b)(1). When a private person (the relator) brings a [*qui tam*] suit, the Government may choose to intervene. *Id.* § 3730(b)(2). Whether the Government intervenes or not, it gets the bulk of the recovery. *See id.* § 3730(d). If it chooses to intervene, it takes over the lead as plaintiff; if not, the relator keeps prosecuting the suit. *Id.* § 3730(c)(1), (3)." *In re Plavix Mktg. Sales Prac. and Products Liab. Litig. (No. II)*, 974 F.3d 228 (C.A.3 (N.J.), 2020)

In addition to the provisions in the Act itself, courts have to interpret Rule 9(b) of the Federal Rules of Civil Procedure, which addresses the heightened pleading requirements for allegations of fraud or mistake. In other words, Relator's pleadings must satisfy all three elements of the FCA, as well as satisfy Rule 9(b)'s heightened pleading standard.

### a. The FAC Satisfies Rule 9(b)

Federal Rule of Civil Procedure 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "To do so, allegations must go well beyond Rule 8's threshold of plausibility. A mere plausible inference of illegality is not enough." *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019). Instead, "a relator must establish a strong inference that false claims were submitted, and the possibility of a legitimate explanation undermines the strength of the inference of illegality." *United States ex rel. Silver v. Omnicare, Inc.*, 903 F.3d 78, 92 (3d Cir. 2018) (quoting *Foglia v. Renal Ventures Mgmt.*, 754 F.3d 153, 158 (3d Cir. 2014) (internal quotations omitted)). In the FCA context, a relator must provide only "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Foglia*, 754 F.3d at 157–58. A relator must allege "'the who, what, when, where, and how of the events at issue.'" *UPMC*, 946 F.3d at 176 (quoting *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 306–07 (3d Cir. 2016)). However, "Rule 9(b) does not require the relators to plead anything more, such as the date, time, place, or content of every single allegedly false Medicare claim" because the "falsity here comes not from a particular misrepresentation, but from a set of circumstances that, if true, makes a whole set of claims at least prima facie false." *UPMC*, 946 F.3d at 176. Furthermore, a relator need not show "the exact content of the false claims in question," as "requiring this sort of detail at the pleading stage would

be one small step shy of requiring production of actual documentation with the complaint, a level of proof not demanded to win at trial and significantly more than any federal pleading rule contemplates." *Foglia*, 754 F.3d at 156 (quotations and citation omitted).

Riverside argues that the FAC lacks the specificity required by 9(b) and thus should be dismissed. To the contrary, this Court is satisfied that viewing the FAC in the light most favorable to Relator, it has provided enough detail to identify the "who, what, where, and when" for an FCA fraud claim. Indeed, the FAC explains the applicable CPT codes for outpatient visits and describes the process for assigning such codes. It details several patient interactions at Riverside's three New Jersey COVID Command Testing Centers during the timeframe Relator alleges the fraudulent billing practices occurred. The FAC identifies at least two patients whose visits were erroneously coded and billed to CMS as part of the billing fraud. Further, Relator alleges six other specific encounters that did not ultimately result in fraudulent claims being submitted directly to CMS, but nevertheless does provide specific details of Riverside's scheme to submit false claims for payment. The FAC is accompanied by charts that demonstrate the implausibility in Riverside's CPT coding practices. For example, according to the data provided in the FAC, in its billing records, Riverside purports to have tested approximately 451 patients over a span of 7.75 hours which would equate to over 58 patients tested per hour and 1.03 minutes spent by the provider per patient encounter (assuming the advanced practice nurses worked continuously without break). Relator alleges that a minute long visit with a patient, assuming the patient was even seen which is another doubt Relator raises, should not result in a CPT code 99213 that charges more to the insurance providers including CMS. The facts as alleged in the FAC satisfy the pleadings standard for both Rule 8(a) and 9(b).

As stated, the FCA is triggered when any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." The facts as alleged in the FAC also adequately establish scienter. In several instances, Relator alleges that Riverside knowingly created false billing statements and knowingly presented those statement and supporting fraudulent records to insurance providers and CMS.

      b. *The Public Disclosure and First-to-file Bars Do Not Apply*

Riverside argues that Relator's case is premised on public information and information gleaned from earlier lawsuits against the same New Jersey healthcare facilities and as such is barred by the FCA. (D.E. 16 at 6.) This Court dismisses any action or claim, unless brought by the government, if the substantially same allegations or transactions alleged were publicly disclosed. *See Majestic Blue Fisheries,* 812 F.3d at 300. However, the burden to show that a claim has already been publicly disclosed rests with the defendant. "[T]o be publicly disclosed, the alleged fraud must have been revealed through at least one of three sources: (1) 'a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party'; (2) 'a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation'; or (3) 'news media.'" *Id.* at 298 (citing 31 U.S.C. § 3730(e)(4)(A), (B) (2012)).

Similarly, the FCA contains a first-to-file bar which stops a new "person" from "interven[ing] or bring[ing] a related action based on the [same] facts." 31 U.S.C. § 3730(b)(5). "A later case need not rest on precisely the same facts as a previous claim to run afoul of this statutory bar. Rather, if a later allegation states all the essential facts of a previously-filed claim, the two are related and section 3730(b)(5) bars the later claim, even if that claim incorporates somewhat different details." *U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Lab'ys, Inc.*, 149 F.3d 227, 232–33 (3d Cir. 1998).

7

Riverside argues that in one case, *United States ex. rel. Hodge v. Urgent Care Holdings Inc.*, No. 2:21cv7596 (D.N.J., Nov. 29, 2022) (J. Wigenton), the plaintiff sued Urgent Care Holdings, Inc. d/b/a MedExpress Urgent Care including all of its practices in New Jersey. Riverside asserts that the relationship between it and MedExpress clinics was well known publicly and that many MedExpress New Jersey clinics became Riverside clinics in 2020. It further argues that "[b]ecause there is a similar lawsuit (*Hodge*) pending that involves Riverside, its affiliates, and practices under common management during the same time period, Relator's FCA claims should be dismissed as barred by the first-to-file bar." (D.E. 16 at 7–8.)

The fatal flaw in Riverside's argument is that *Hodge* does not directly or indirectly disclose Riverside as a party or affiliate such that the public disclosure or first-to-file bars would apply here. First, the claims alleged in *Hodge* involve a completely different billing scheme. Second, the alleged scheme is limited only to conduct occurring in Virginia by Virginia clinics. Finally, Riverside and the defendant in *Hodge*, Urgent Care are unrelated entities. Urgent Care certified in *Hodge* that it is a wholly owned subsidiary of United Health Group Incorporated whereas Riverside certified here that its sole shareholder is Guarang Ravaji Brahmbharr M.D. (D.E. 26 at 5–6.) Importantly, Riverside is not mentioned in Urgent Care's Corporate Disclosure Statements filed in *Hodge*; similarly, Urgent Care is not referred to in Riverside's Corporate Disclosure Statement. It appears from these filings that Urgent Care and Riverside have entirely distinct ownership and Riverside fails to support its assertion that the two entities are related. Such an assertion is not obvious or readily discoverable by the public to satisfy the FCA's public disclosure and first-to-file bars. As such, the bars do not apply here.

    c. *Relator Is Not An Original source.*

Riverside argues that Relator's claims fail because it is not an "original source" of any information. It asserts that because Relator is a company that did not exist until a month before this suit was filed, it has no direct knowledge of any wrongdoing and cannot base its allegations on the knowledge of the anonymous individual physician. (D.E. 16 14–15.)

Under the FCA Section 3730(e)(4)(A), "[n]o court shall have jurisdiction over an action . . . based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office [sic] report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." Section 3730(e)(4)(B) defines an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." "[C]ourts must be mindful of suits based only on "secondhand information, speculation, background information or collateral research[.]" *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 523 (3d Cir. 2007) (internal citation and quotation omitted); *see generally U.S. ex. rel. Mistick PBT v. Hous. Auth. of City of Pittsburgh*, 186 F.3d 376, 386–87 (3d Cir. 1999) (finding that relator had only secondhand information of a fraud it did not directly observe).

The FAC contains allegations pled "upon information and belief." (D.E. 14 ¶¶ 102, 107–08.) Although this Court is satisfied that the public disclosure bar does not apply, the allegations must still be based on direct knowledge. While the information alleged in the FAC has not been publicly disclosed in prior suits, because Relator is an LLC that did not exist at the time the fraud is alleged to have occurred and has made no showing that it has a legitimate claim to the

9

information it alleges, it cannot claim direct knowledge. Indeed, Relator relies on the knowledge of its undisclosed principal who claims to have been employed by Riverside as a physician at all relevant times and either witnessed or became aware of the fraudulent coding practices through billing records. The information Relator claims to possess is at best secondhand. This is not to say an entity cannot ever be an original source and a proper relator in an FCA matter, but rather the entity would, at the very least, need to be in existence and an original source of the facts being alleged. *See generally, Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 451–51 (5th Cir. 1995) (affirming district court's finding that the entity was not a proper relator because it was formed after the alleged events occurred). Here, the original source is the individual physician, not Relator, and the knowledge of the undisclosed individual cannot be imputed to the LLC. Further, disclosing the identity of the "principal" or "physician" is necessary to ensure a proper public disclosure so that Riverside does not face subsequent claims from the same individual(s).

        d. *The FCA Claims are Constitutional.*

Riverside argues that because the United States declined to intervene it would be unconstitutional to allow Relator to proceed with this lawsuit as it would impede on the exclusive power of the executive branch to enforce laws of the United States pursuant to Article II of the Constitution. *Qui tam* FCA actions do not run afoul the separations of powers and appointment clauses as suggested by Riverside because the Government maintains "sufficient control" over such actions. *Morrison v. Olson*, 487 U.S. 654, 693 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988)); *see also U.S. Dep't of Hous. & Urb. Dev. ex rel. Givler v. Smith*, 775 F. Supp. 172, 178 (E.D. Pa. 1991). In sum, the Government may "intervene and then take primary responsibility for conducting the litigation; it can seek judicial limitation of the relator's participation; it can seek a stay of the relator's discovery; and it can seek dismissal or settlement over the relator's objection."

*U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 753 (9th Cir. 1993). *Qui tam* relators have limited authority in these matters. Further, the Supreme Court has long held that relators have Article III standing in *qui tam* actions. *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). Relator's claims are constitutional despite the Government declining to intervene.[3]

### IV. Conclusion

For the reasons set forth above, Defendant Riverside Medical Group P.C.'s Motion to Dismiss the First Amended Complaint, (D.E. 14), is **DENIED in part and GRANTED in part without prejudice.** Resolution NJ LLC shall have thirty (30) days from the date of the Order to amend the FAC, in accordance with this opinion, identifying the principal of the LLC. An appropriate order follows.

                                                                   /s/ Susan D. Wigenton
                                                            **SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
      Leda D. Wettre U.S.M.J.

---

[3] In addition to the FCA claims arising under 31 U.S.C. 3729–33, Relator also raises a New Jersey False Claims violation arising under N.J.S.A. § 2A:32C-3. This Court will defer ruling on its exercise of supplemental jurisdiction over the state claim until after Relator has amended the FAC in accordance with this Opinion and subsequent Order.