Stephen A. Weiss
Justin M. Smigelsky
Steven J. Daroci
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
(973) 639-9100

*Attorneys for Plaintiff-Relator Resolution NJ LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF NEW JERSEY *ex rel.* RESOLUTION NJ LLC,<br><br>Plaintiffs,<br><br>v.<br><br>RIVERSIDE MEDICAL GROUP, P.C.,<br><br>Defendant. | Case No. 22-04165 (SDW) (LDW)<br><br>Motion Date: October 21, 2024<br><br>ORAL ARGUMENT REQUESTED |

**PLAINTIFF-RELATOR'S BRIEF IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DATED SEPTEMBER 6, 2024, AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

# Table of Contents

**Page**

PRELIMINARY STATEMENT ................................................................ 1

RELEVANT PROCEDURAL HISTORY ................................................ 3

ARGUMENT .......................................................................................... 4

   I.   Reconsideration is warranted because it was error to consider the original-source exception to the public-disclosure bar absent any prior public disclosures. .......................................................................................... 4

     A.   The Court erred in reaching the "original source" question despite finding that Relator's allegations had not been publicly disclosed. ................. 5

     B.   The Court's unwarranted original-source inquiry was itself flawed. ...... 8

       1.   Relying on an outdated version of the FCA, the Court incorrectly required "direct knowledge" to be an "original source." .............................. 9

       2.   Even if "direct knowledge" was required, the Court incorrectly declined to impute the knowledge of Relator's principal to Relator. ......................... 10

  II.   The Court should grant Relator leave to file a Second Amended Complaint naming additional Riverside entities as Defendants. .......................................... 12

     A.   Relator has recently discovered additional Riverside entities involved in the alleged upcoding scheme at the COVID Command Centers.................... 12

     B.   The Court should grant Relator leave to file a Second Amended Complaint naming these additional Riverside entities. .................................. 16

       1.   The Riverside Defendants will not be prejudiced by filing of the SAC.18

       2.   There is no undue delay. ....................................................... 20

       3.   Granting leave to file the Second Amended Complaint will not be futile. ...................................................................... 21

       4.   Amendment will promote judicial economy and effective case management. ................................................................. 23

CONCLUSION ..................................................................................... 24

## <u>Table of Authorities</u>

**Page(s)**

**Cases**

*Albert v. Alex. Brown Mgmt. Servs., Inc.*,
  2005 WL 2130607 (Del. Ch. Aug. 26, 2005) ..................................................... 14

*Alsco, Inc. v. Premier Outsourcing Plus, LLC*,
  2020 WL 4209192 (D. Del. July 22, 2020) ....................................................... 14

*Bodyguard Prods., Inc. v. RCN Telecom Servs., LLC*,
  2023 WL 8453167 (D.N.J. Dec. 6, 2023) .................................................... 23, 24

*Boileau v. Bethlehem Steel Corp.*,
  730 F.2d 929 (3d Cir. 1984) .............................................................................. 29

*Bullock v. Ancora Psychiatric Hospital*,
  2012 WL 12897881 (D.N.J. Dec. 20, 2012) ...................................................... 24

*CBD & Sons, LTD. v. Setteducati*,
  2020 WL 6277844 (D.N.J. Sept. 28, 2020) ....................................................... 24

*Colonial Sur. Co. v. Alpha Software Corp.*,
  2019 WL 2137365 (D.N.J. May 16, 2019) ............................................. 27, 31, 32

*Fed. Recovery Servs., Inc. v. United States*,
  72 F.3d 447 (5th Cir. 1995) ............................................................................... 15

*Foman v. Davis*,
  371 U.S. 178 (1962) .......................................................................................... 25

*Franchitti v. Cognizant Tech. Sols. Corp.*,
  555 F. Supp. 3d 63 (D.N.J. 2021) ........................................................................ 6

*Gibbons v. Kvaerner Philadelphia Shipyard, Inc.*,
  2006 WL 328362 (E.D. Pa. Feb. 10, 2006) ......................................................... 9

*GS Holistic, LLC v. Maya & Jill, Inc.*,
  2023 WL 9687510 (C.D. Cal. Oct. 20, 2023) .................................................... 34

*Harrison Beverage Co. v. Dribeck Importers, Inc.*,
  133 F.R.D. 463 (D.N.J. 1990) ............................................................................ 32

*Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous. of Virgin Islands, Inc.*,
  663 F.2d 419 (3d Cir. 1981) ............................................................................... 28

*High 5 Games, LLC v. Marks*,
  2018 WL 2134038 (D.N.J. May 9, 2018) .................................................... passim

*In re Hlywiak*,
  573 F. Supp. 2d 871 (D.N.J. 2008) ......................................................................... 4

*In re Plavix Mktg., Sales Practices & Products Liab. Litig. (No. II)*,
  315 F. Supp. 3d 817 (D.N.J. 2018) ...................................................................... 16

*Minnesota Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*,
  276 F.3d 1032 (8th Cir. 2002) .............................................................................. 17

*Mullin v. Balicki*,
  875 F.3d 140 (3d Cir. 2017) ................................................................... 23, 30, 34

*Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*,
  106 F. Supp. 2d 761 (D.N.J. 2000) ...................................................................... 32

*Rosa v. Tropicana Atl. City Corp.*,
  2022 WL 111045 (D.N.J. Jan. 12, 2022) ............................................................. 25

*Rosenzweig v. Transworld Sys., Inc.*,
  2016 WL 5106995 (D.N.J. Sept. 20, 2016) ......................................................... 32

*U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*,
  96 F. Supp. 3d 504 (E.D. Pa. 2015) ..................................................................... 10

*U.S. ex rel. Landsberg v. Levinson*,
  2008 WL 2246308 (W.D. Pa. May 29, 2008) ......................................................... 8

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
  812 F.3d 294 (3d Cir. 2016) .......................................................................... 13, 16

*U.S. ex rel. Rost v. Pfizer, Inc.*,
  507 F.3d 720 (1st Cir. 2007) ............................................................................... 10

*U.S. ex rel. Spay v. CVS Caremark Corp.*,
 913 F. Supp. 2d 125 (E.D. Pa. 2012) ........................................................ 6, 7, 11

*United States ex rel. Alejandro v. Philadelphia Vision Ctr.*,
 2022 WL 294548 (E.D. Pa. Feb. 1, 2022) ................................................ 9

*United States ex rel. Atkinson*,
 473 F.3d 506 (3d Cir. 2007).................................................................... 8

*United States ex rel. Ellsworth Assocs., LLP v. CVS Health Corp.*,
 660 F. Supp. 3d 381 (E.D. Pa. 2023) ...................................................... 6

*United States ex rel. Springfield Terminal v. Quinn*,
 14 F.3d 645 (D.C. Cir. 1994) ................................................................ 10, 17

*United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v.
 Prudential Ins. Co.*,
 944 F.2d 1149 (3d Cir. 1991)................................................................ 15

*United States v. Catholic Health Sys. of Long Island Inc.*,
 2017 WL 1239589 n.11 (E.D.N.Y. Mar. 31, 2017) ............................... 11

*United States v. Omnicare, Inc.*,
 903 F.3d 78 (3d Cir. 2018)..................................................................... 8

*United States v. Philadelphia Vision Ctr.*,
 2022 WL 2304307 (E.D. Pa. June 27, 2022) ........................................ 10

*Walsh Sec. Inc. v. Cristo Property Mgmt.*,
 2009 WL 1883988 (D.N.J. June 30, 2009) ........................................... 4

*Wang v. FMC Corp.*,
 975 F.2d 1412 (9th Cir. 1992)............................................................... 11

**PRELIMINARY STATEMENT**

The Court's September 6, 2024 Order and accompanying Opinion largely denied the Motion to Dismiss filed by Defendant Riverside Medical Group, P.C., holding that (i) Relator's allegations describing the upcoding scheme at Riverside's COVID Command Testing Centers satisfied the heightened pleading standard of Rule 9(b), (ii) the public-disclosure and first-to-file bars ***did not apply*** to Relator's claims, and (iii) Relator's claims under the False Claims Act ("FCA") were constitutional. Op. at 4-11, ECF No. 64; Order, ECF No. 65.[1] Yet, despite finding that there had been no prior public disclosure of Relator's allegations, the Court proceeded to analyze whether Relator qualified as an "original source"—an inquiry the Third Circuit has explained is ***only*** appropriate if there has been a prior public disclosure. Here, given the absence of any such public disclosure, the Court's consideration of the original-source exception—and its resulting directive to identify Relator's principal—was clear error, and reconsideration is warranted on this basis alone.

The Court's error in reaching the original-source question was exacerbated by two additional flaws in its analysis of that issue: (i) imposing a "direct knowledge" requirement based on an outdated version of the FCA, and (ii) declining to impute

---

[1] Unless noted, all emphases are added and all citations, alterations, and internal quotation marks are omitted.

the knowledge of Relator's sole principal—a Riverside employee—to the Relator in accordance with well-settled Delaware law. Additionally, Relator voluntarily identified its principal to Riverside five months ago, thus negating the Court's articulated concerns regarding the potential for multiple claims against Riverside by the same individual.

Relator respectfully requests that the Court reconsider the portion of its September 6, 2024 Opinion and Order that reached the original-source exception and directed Relator to amend its complaint to identify its sole principal.

Separately, Relator seeks leave to file a Second Amended Complaint to name three additional Riverside-affiliated entities as Defendants: Riverside Pediatric Group, P.C.; Riverside Medical LLC; and Riverside Pediatric Group, Inc. The preliminary discovery conducted to date has implicated each of these entities and confirmed their distinct involvement with the drive-thru COVID Command Testing Centers at the heart of the fraudulent upcoding scheme described by Relator.[2]

For these reasons, and as set forth below, Relator's Motion should be granted, such that Relator is permitted to file its proposed Second Amended Complaint without any requirement that it identify its principal.

---

[2] Relator's proposed Second Amended Complaint is attached as Exhibit 1 to the Declaration of Steven J. Daroci ("Daroci Decl.") submitted herewith. A redline version indicating in what respects the proposed Second Amended Complaint differs from the operative First Amended Complaint is attached as Exhibit 2.

## RELEVANT PROCEDURAL HISTORY

Relator initiated this lawsuit on June 17, 2022 [ECF No. 1]. After the Complaint was unsealed, Relator filed its First Amended Complaint ("Amended Complaint") on May 31, 2023 [ECF No. 14]. Riverside Medical Group filed a Motion to Dismiss the Amended Complaint on July 12, 2023 [ECF No. 15]. Relator filed opposition to the motion [ECF No. 26], and Riverside Medical Group filed reply papers on September 12, 2023 [ECF No. 32]. After the motion was administratively terminated on February 1, 2024, due to case reassignment [ECF No. 46], the parties re-filed their motion papers [ECF Nos. 48-49].

While the motion was pending, Judge Wettre entered a Pretrial Scheduling Order on January 9, 2024 [ECF No. 45]. Thereafter, in April 2024, the parties exchanged written discovery responses. On June 28, 2024, in response to Riverside Medical Group's request to stay discovery pending resolution of its motion [ECF No. 60], Judge Wettre entered a Text Order effectively staying discovery (with the exception of the parties' finalizing their ESI Protocol) [ECF No. 62].

On September 6, 2024, the Court issued its Opinion and corresponding Order on the pending Motion to Dismiss [ECF Nos. 64-65]. In its Opinion, the Court held that (i) Relator's Amended Complaint satisfied the heightened pleading standard of Rule 9(b), (ii) the public-disclosure and first-to-file bars did not apply to Relator's claims, and (iii) Relator's FCA claims were constitutional. *See* Op. at 4-11. Despite

finding that Relator's allegations had not been previously disclosed publicly, the Court nevertheless proceeded to evaluate whether Relator was an "original source" under that exception to the public-disclosure bar and determined that Relator was not an "original source" due to its purported lack of "direct knowledge." Op. at 8-10. The Court's Order therefore requires Relator to further amend the Amended Complaint to identify the individual principal of Relator [ECF No. 65].

**ARGUMENT**

I.    **Reconsideration is warranted because it was error to consider the original-source exception to the public-disclosure bar absent any prior public disclosures.**

"A party may move for reconsideration where it believes that the court has overlooked matters brought before it," *Walsh Sec. Inc. v. Cristo Property Mgmt.*, 2009 WL 1883988, at *1 (D.N.J. June 30, 2009), and the Court has broad discretion to reconsider an order "to correct a clear error of law or prevent manifest injustice." *In re Hlywiak*, 573 F. Supp. 2d 871, 873 (D.N.J. 2008).

Relator meets the standard for reconsideration under Local Civil Rule 7.1(i) because the Court erroneously considered the original-source question after finding that Relator's allegations of fraud on the part of Riverside Medical Group **had not been previously disclosed publicly**. The Court's ensuing analysis of the original-source exception to the public-disclosure bar was also unsound because it incorrectly: (1) applied an outdated version of the FCA that had required an "original

source" to have "direct knowledge," and (2) declined to impute the knowledge of Relator's principal to the Relator LLC, in contravention of well-established Delaware law.

### A. The Court erred in reaching the "original source" question despite finding that Relator's allegations had not been publicly disclosed.

The public-disclosure bar compels courts to dismiss *qui tam* claims if "substantially the same allegations . . . were publicly disclosed"—**unless** the relator is "an original source of the information." 31 U.S.C. § 3730(e)(4)(A). The public-disclosure bar, therefore, "contains an **exception** for relators who are the original source of the information so that even if a public disclosure has occurred, a relator may still proceed if they qualify for this exception." *United States ex rel. Ellsworth Assocs., LLP v. CVS Health Corp.*, 660 F. Supp. 3d 381, 394 (E.D. Pa. 2023); *see also Franchitti v. Cognizant Tech. Sols. Corp.*, 555 F. Supp. 3d 63, 72 (D.N.J. 2021) (same; quoting 31 U.S.C. § 3730(e)(4)(A)). As its name suggests, the original-source exception is an exception, so where there have been no prior public disclosures, as in this case, relators "need not come forward with any proof that he falls within the exception to this bar as an 'original source.'" *U.S. ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 185 (E.D. Pa. 2012).

In its Opinion, the Court found that the public-disclosure bar and first-to-file bar "**do not apply here**." Op. at 8. In rejecting Riverside Medical Group's argument that another case, *United States ex. rel. Hodge v. Urgent Care Holdings Inc.*, No.

2:21-cv-7595 (D.N.J.), triggered the public-disclosure bar, the Court recognized that "[t]he fatal flaw in Riverside's argument is that *Hodge* does not directly or indirectly disclose Riverside as a party or affiliate such that the public disclosure or first-to-file bars would apply here" because (i) the claims in *Hodge* "involve a completely different billing scheme," (ii) the scheme in *Hodge* "is limited only to conduct occurring in Virginia by Virginia clinics," and (iii) Riverside Medical Group and Urgent Care, the defendant in *Hodge*, "are unrelated entities." *Id.*

Despite holding that Relator's allegations had ***not*** been publicly disclosed, the Court proceeded to consider whether Relator was an "original source" under that exception to the public-disclosure bar. *Id.* at 8-10. Respectfully, this was a fundamental error: once the Court determined that Relator's claims were not based upon publicly disclosed allegations, there was no threshold basis for the Court to take up the original-source question. That question "***is only reached*** if it has already been determined that the relator's claims are based upon allegations that were publicly disclosed." *U.S. ex rel. Landsberg v. Levinson*, 2008 WL 2246308, at *2 (W.D. Pa. May 29, 2008).[3] The Court of Appeals for the Third Circuit has explained that courts should first "assess[] whether the allegations and transactions constituting

---

[3] The parties' arguments in connection with the Motion to Dismiss were consistent on this point. *See* ECF No. 26 at 14 (Relator's opposition brief argument that original-source exception only comes into play if Relator's allegations were publicly disclosed); *see also* ECF No. 16 at 14-16 (Riverside Medical Group's moving brief with its original-source argument subsumed within its public-disclosure argument).

the bases of the claims were publicly disclosed and whether, *if they were*, the relator is an original source." *United States ex rel. Atkinson*, 473 F.3d 506, 515 (3d Cir. 2007); *see also United States v. Omnicare, Inc.*, 903 F.3d 78, 94 n.12 (3d Cir. 2018) (concluding that, absent any public disclosure, it is unnecessary to address whether relator qualified as an "original source.").

Indeed, where there has been no public disclosure, as here, refraining from considering the original-source question aligns with the text of the FCA, because whether a relator is an original source "only becomes an issue *after it is established* that her knowledge of the alleged fraud came about through a public disclosure." *Gibbons v. Kvaerner Philadelphi*a Shipyard, Inc., 2006 WL 328362, at *9 (E.D. Pa. Feb. 10, 2006). For that reason, courts throughout the Third Circuit have appropriately declined to consider the original-source exception unless there has been a prior public disclosure. *See, e.g.*, *United States ex rel. Alejandro v. Philadelphia Vision Ctr.*, 2022 WL 294548, at *10 (E.D. Pa. Feb. 1, 2022) ("Because Defendants have not shown Alejandro's allegations were 'based upon' public disclosures, the Court need not consider whether she qualifies for the 'original-source' exception to the public disclosure bar."), *reconsideration denied sub nom. United States v. Philadelphia Vision Ctr.*, 2022 WL 2304307 (E.D. Pa. June 27, 2022); *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 511 (E.D. Pa. 2015) ("If I find there was no public disclosure, I need not consider Mr. Gohil's

original source status.").[4] Given the absence of any public disclosure here, it was error to consider the original-source exception to the public-disclosure bar.

### B.    The Court's unwarranted original-source inquiry was itself flawed.

As set forth above, the Court should not have reached the original-source question because it determined that Relator's allegations had not been previously publicly disclosed. This alone warrants reconsideration. Additionally, however, it is respectfully submitted that the Court's error in reaching the original-source question was aggravated by two additional flaws in its assessment of that question: (1) imposing a "direct knowledge" requirement based on an out-of-date version of the FCA, and (2) declining to impute the knowledge of Relator's sole principal to the Relator LLC in accordance with well-settled Delaware law. These additional errors warrant reconsideration of the Court's Order.

---

[4] Other circuit and district courts from across the country are in accord. *See, e.g.*, *U.S. ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 728 (1st Cir. 2007) (finding that because there had been no public disclosure, the court need not address whether the relator falls within the original source exception); *United States ex rel. Springfield Terminal v. Quinn*, 14 F.3d 645, 651 (D.C. Cir. 1994) ("If—***and only if***—the answer to the first question" about whether there was a public disclosure "is affirmative . . . will the court proceed to the 'original source' inquiry"); *Wang v. FMC Corp.,* 975 F.2d 1412, 1416 (9th Cir. 1992) ("Where there has been no 'public disclosure' . . . , there is no need for a *qui tam* plaintiff to show that he is the 'original source' of the information"); *United States v. Catholic Health Sys. of Long Island Inc.*, 2017 WL 1239589, at *13 n.11 (E.D.N.Y. Mar. 31, 2017) ("Whether the relator was the original source of the information . . . only become relevant if the information was publicly disclosed or publicly accessible."); *Spay*, 913 F. Supp. 2d at 185 (same).

1.    **Relying on an outdated version of the FCA, the Court incorrectly required "direct knowledge" to be an "original source."**

In its Opinion, the Court found that, although it was "satisfied that the public disclosure bar does not apply, the allegations ***still must be based on direct knowledge***" in order for a relator to qualify as an original source. Op. at 9. But as support for its conclusion, the Court cited an outdated version of 31 U.S.C. § 3730(e)(4)(B). In 2010, the Patient Protection and Affordable Care Act ("PPACA") amended this section of the FCA to state that original-source status depends only on whether the relator has "***knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions***." 31 U.S.C. § 3730(e)(4)(B).[5]

The Third Circuit has explained that, under this "expanded . . . definition" of "original source," relators now "no longer must possess 'direct . . . knowledge' of the fraud to qualify as an original source." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 299 (3d Cir. 2016). Rather, "original source status now turns on whether the relator has 'knowledge that is ***independent of and materially adds to*** the publicly disclosed allegations or transactions.'" *Id.* The

---

[5] This amended definition of "original source" underscores Relator's argument that the original-source question should only be reached if a public disclosure is found because this amended definition presumes that there will already be "publicly disclosed allegations or transactions" that an original source's knowledge can materially supplement.

Court's conclusion that Relator's allegations "must be based on direct knowledge" in order for it to qualify as an original source was therefore erroneous.

> **2. Even if "direct knowledge" was required, the Court incorrectly declined to impute the knowledge of Relator's principal to Relator.**

In its Opinion, the Court concluded that, because the knowledge of Relator's principal, a current Riverside employee, "cannot be imputed to the LLC," Relator's knowledge was "secondhand." Op. at 10. But even if "direct knowledge" was still required to be an "original source," Relator is a Delaware LLC,[6] and, under well-established Delaware law, the knowledge of LLC members *is imputed to the LLC itself*. *See Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at *11 (Del. Ch. Aug. 26, 2005); *see also Alsco, Inc. v. Premier Outsourcing Plus, LLC*, 2020 WL 4209192, at *8 (D. Del. July 22, 2020) ("It is the general rule that knowledge of an officer or director of a corporation will be imputed to the corporation. This basic principle of agency law applies with equal force to LLCs."), *report and recommendation adopted*, 2020 WL 4501921 (D. Del. Aug. 5, 2020).

As Relator argued in its opposition papers, Relator's principal is "[t]he paradigmatic . . . whistleblowing insider," *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1161 (3d Cir. 1991), who acquired knowledge of Riverside's fraud in the ordinary course of his

---

[6] *See* Am. Compl. ¶18, ECF No. 14.

responsibilities as an employee of Riverside. *See* Opp. Br. at 15-16, ECF No. 26. This knowledge of Relator's principal (and sole member) is imputed to Relator here—negating any concern that Relator's knowledge is merely "secondhand."[7]

Moreover, the formation of LLCs, partnerships, and other organizational entities to serve as relators in False Claims Act cases has become a common convention in this District, and nationwide, over at least the last decade. As this District Court has held, "[t]the FCA does not limit relator standing to natural persons." *In re Plavix Mktg., Sales Practices & Products Liab. Litig. (No. II)*, 315 F. Supp. 3d 817, 822 (D.N.J. 2018), *vacated and remanded on other grounds*, 974 F.3d 228 (3d Cir. 2020). In that regard, "the Third Circuit has adjudicated matters with partnership/association relators" and has determined that entities could qualify as original sources. *Id.* (citing *Majestic Blue Fisheries*, 812 F.3d at 294 (involving professional association relator)). *See also Springfield Terminal*, 14 F.3d at 645 (FCA action brought by corporation); *Minnesota Ass'n of Nurse Anesthetists v.*

---

[7] In support of its finding that Relator is not an "original source" because it lacks "direct knowledge," the Court relied on the Fifth Circuit's decision in *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447 (5th Cir. 1995). That decision is readily distinguished, however, because the court there relied on the **prior** version of the FCA in determining that the entity relator there "had no 'direct and independent' knowledge of the information upon which this qui tam action is based." *Id.* But that is no longer the relevant question. Under the current statue, original-source status depends only on whether the relator has "knowledge that is independent of and materially adds to" any allegations or disclosures that have already been publicly disclosed. 31 U.S.C. § 3730(e)(4)(B).

*Allina Health Sys. Corp.*, 276 F.3d 1032, 1049 (8th Cir. 2002) ("There is no hint in the history of the 1986 Amendments Act that Congress intended to disqualify organizational relators.").

Finally, as further support for its conclusion that Relator must amend its complaint to identify its principal, the Court noted that "disclosing the identity of the 'principal' or 'physician' [of Relator] is necessary to ensure a proper public disclosure so that Riverside does not face subsequent claims from the same individual(s)." Op. at 10. Although the identity of Relator's principal had not been disclosed at the time of the parties' briefing in connection with the Motion to Dismiss, Relator voluntarily disclosed the identity of its principal to Defendant on April 12, 2024, in connection with its responses to Riverside Medical Group's First Set of Interrogatories. *See* Daroci Decl. ¶ 3. Riverside has been on notice of the identity of Relator's principal for the past five months, so there is no risk to Riverside of "subsequent claims from the same individual(s)" (Op. at 10) if Relator—rather than its individual principal—proceeds as the named Plaintiff-Relator in this action.

## II.    The Court should grant Relator leave to file a Second Amended Complaint naming additional Riverside entities as Defendants.

### A.    Relator has recently discovered additional Riverside entities involved in the alleged upcoding scheme at the COVID Command Centers.

In its Amended Complaint, Relator alleges that, during the COVID-19 pandemic, Riverside Medical Group, P.C. operated three drive-thru COVID

Command Testing Centers, where it provided hundreds of drive-thru swab tests per day—many of which were completed in a manner of seconds with no medical examination or services (other than specimen collection) provided by Riverside Medical Group. Relator further alleges that Riverside Medical Group fraudulently upcoded these drive-thru tests, billing government-funded healthcare programs and private insurers for examinations and services that never occurred. *See generally* Am. Compl., ECF No. 14.

Relator named Riverside Medical Group, P.C. as the Defendant based on information in its possession indicating that Riverside Medical Group was the sole entity operating the COVID Command Testing Centers. Through preliminary written discovery, however, Relator has learned that this upcoding scheme involved the following Riverside-affiliated entities: (i) Riverside Pediatric Group, P.C.; (ii) Riverside Medical LLC; and (iii) Riverside Pediatric Group, Inc.

***Riverside Pediatric Group, P.C. & Riverside Medical LLC.*** In Relator's First Set of Interrogatories, Relator asked Riverside Medical Group, P.C. to "[i]dentify the corporate entities that operated each of the COVID Command Centers, as well as the time period during which each such entity operated each such COVID Command Center." *See* Daroci Decl., Ex. 3 at Interrog. 1. In response, Riverside Medical Group confirmed that another entity—Riverside Pediatric Group, P.C. (now known as Optum Medical Care of New Jersey, P.C.)—primarily operated the

COVID Command Testing Centers, and that another entity—Riverside Medical LLC—was involved with issuing payment to support staff working at the COVID Command Testing Centers:

> "Riverside states that **Riverside Pediatric Group, P.C.** (n/k/a Optum Medical Care of New Jersey, P.C.) was licensed to operate the COVID Command Centers, issued payment to licensed clinical staff working at the COVID Command Centers, submitted claims for reimbursement for COVID-19-related patient encounters at the COVID Command Centers, and received reimbursements for such claims. **Riverside Medical LLC** issued payment to support staff working at the COVID Command Centers.

*Id.* Additionally, a publicly available Resolution Agreement between the United States Department of Health and Human Services, Office for Civil Rights (HHS) and Optum Medical Cate of New Jersey, P.C. (formerly known as Riverside Pediatric Group, P.C.), dated November 15, 2023, indicates that Riverside Pediatric Group, P.C. previously used "Riverside Medical Group" as a DBA. *See* Daroci Decl. Ex. 4.

Riverside Medical Group has not been forthcoming about the relationship between Riverside Pediatric Group, P.C. and the named Defendant in this case, Riverside Medical Group, P.C.  For example, in response to an interrogatory asking Riverside Medical Group, P.C. to describe "the relationship among Riverside Medical Group, P.C., Riverside Pediatric Group, P.C., and Optum Medical Care of New Jersey, P,C," Riverside Medical Group directed Relator to its Rule 7.1 Corporate Disclosure Statement and stated that "[t]here is no known relationship

between Optum Medical Care of New Jersey, P.C. (f/k/a Riverside Pediatric Group, P.C. d/b/a Riverside Medical Group) and Riverside Medical Group, P.C." Daroci Decl., Ex. 3 at Interrog. 15. In its Corporate Disclosure Statement, Riverside Medical Group "disclose[d] that its sole shareholder is Gaurang Ravaji Brahmbhatt, M.D." Daroci Decl. Ex. 5. Yet, despite certifying in its interrogatory responses that "[t]here is no known relationship" between Riverside Medical Group, P.C. and Riverside Pediatric Group, P.C., Riverside Medical Group, P.C.'s interrogatory responses are verified by Dr. Brahmbhatt *as Chief Medical Officer of Optum Medical Care of New Jersey*—the entity formerly known as Riverside Pediatric Group, P.C.[8]

---

DocuSign Envelope ID: C1681F9A-7DB5-4B13-ADF6-C08F590A3B76

**VERIFICATION OF INTERROGATORY ANSWERS**

I, Gaurang Brahmbhatt, am the Chief Medical Officer at Riverside. Based on reasonable inquiry, the foregoing answers are true and correct to the best of my knowledge, information, and belief. I verify under penalty of perjury that the foregoing is true and correct.

Executed on: April 12, 2024

DocuSigned by:

*Gaurang Brahmbhatt*

Dr. Gaurang Brahmbhatt
Chief Medical Officer
Optum Medical Care of New Jersey

---

*See* Daroci Decl., Ex. 3.

Although it is unclear why a representative of *Optum Medical Care of New Jersey* would be verifying Defendant Riverside Medical Group, P.C.'s interrogatory

---

[8] The Resolution Agreement between HHS and Optum Medical Care of New Jersey. P.C. (formerly known as Riverside Pediatric Group, P.C.) identifies Dr. Brahmbhatt as the ***President*** of that entity. *See* Daroci Decl. Ex. 4.

responses in this case (while at the same time disavowing any relationship between those two entities), there is no question that there is—at the very least—a relationship between Riverside Medical Group, P.C. and Riverside Pediatric Group, P.C. (now Optum Medical Care of New Jersey, P.C.) through Dr. Brahmbhatt.

**Riverside Pediatric Group, Inc.** Riverside Medical Group's recent disclosure that Riverside Pediatric Group, P.C. was the entity primarily responsible for operating the COVID Command Centers has also implicated another entity in the upcoding scheme at the COVID Command Testing Center—**Riverside Pediatric Group, Inc.**—whose name appears in documents memorializing patient encounters at the COVID Command Centers:



*See* Daroci Decl., Ex. 6.

### B. The Court should grant Relator leave to file a Second Amended Complaint naming these additional Riverside entities.

The liberal standard for amending a pleading is governed by Federal Rule of Civil Procedure 15, which does not place a time limit on when amendment is

permissible but instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal amendment regime helps effectuate the general policy embodied in the Federal Rules favoring resolution of cases on their merits." *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017). "A decision on whether to permit amendment of the pleadings generally falls within the District Court's discretion." *Id.* at 150; *see also High 5 Games, LLC v. Marks*, 2018 WL 2134038, at *3 (D.N.J. May 9, 2018).

In addition, where, as here, a proposed amendment seeks to add a party, Rule 21 is implicated. *Bodyguard Prods., Inc. v. RCN Telecom Servs., LLC*, 2023 WL 8453167, at *5 (D.N.J. Dec. 6, 2023) (citing *Bullock v. Ancora Psychiatric Hospital*, 2012 WL 12897881, at 4 (D.N.J. Dec. 20, 2012)); *see generally* Fed. R. Civ. P. 21 ("[o]n motion or on its own, the court may at any time, on just terms, add or drop a party"). "In determining whether joinder of additional parties is permissible, courts adhere to the same standard of liberality afforded to motions to amend under Rule 15." *Bodyguard Prods.*, 2023 WL 8453167, at *5; *CBD & Sons, LTD. v. Setteducati*, 2020 WL 6277844, at *3 (D.N.J. Sept. 28, 2020) ("The Rule 15 standard applies to a motion brought under Rule 21.").

Leave to amend is freely granted unless there has been undue delay or prejudice, bad faith or dilatory motive on behalf of the movant, repeated failure to cure deficiencies by amendments previously allowed, or futility. *See High 5 Games*,

2018 WL 2134038, at *3 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Rosa v. Tropicana Atl. City Corp.*, 2022 WL 111045, at *2 (D.N.J. Jan. 12, 2022) (same).

Here, the preliminary written discovery exchanged by the parties to date while Riverside's Motion to Dismiss remained pending has provided Relator with information indicating that additional Riverside entities were involved in the alleged upcoding scheme at the COVID Command Centers. As set forth below, the Court should allow the filing of Relator's Second Amended Complaint because it does not prejudice Riverside Medical Group, P.C. or any of the other Riverside entities (collectively, the "Riverside Defendants"), there has been no undue delay, amendment would not be futile, and judicial efficiency supports amendment.

### 1.    The Riverside Defendants will not be prejudiced by filing of the SAC.

"Prejudice to the non-moving party is the touchstone for the denial of an amendment." *See High 5 Games*, 2018 WL 2134038, at *3. But the prejudice must be more than incidental. *Id.* Rather, "[t]he party opposing amendment must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the [plaintiff's] amendments been timely." *Colonial Sur. Co. v. Alpha Software Corp.*, 2019 WL 2137365, at *5 (D.N.J. May 16, 2019). The Third Circuit has acknowledged that although "[t]he exact nature and degree of prejudice necessary for denial of an amendment is not readily susceptible

to a precise formula . . . the defendants must show that the amendment would adversely affect their ability to defend adequately the case." *Id.*

Prejudice is generally evaluated by looking at whether the amendment would: (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the nonmoving party from bringing a timely action in another forum. *High 5 Games*, 2018 WL 2134038, at *3; *see also Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous. of Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981) (stating the objecting party "has a heavier burden than merely claiming prejudice, it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence . . .").

Here, Relator proposes to add three additional Defendants, all of which appear to be closely affiliated, and Relator's claims against these new Riverside Defendants are the same as its claim against the current Defendant, Riverside Medical Group, P.C. Additionally, this case is still in the early stages of discovery. The parties exchanged written discovery responses in April 2024, shortly before discovery was stayed pending Riverside's Motion to Dismiss, and just recently submitted an ESI Protocol to the Court to govern the parties' forthcoming collection and production of ESI and hard copy documents [ECF Nos. 63, 66]. To date, no documents have been exchanged, and depositions have not yet begun.

## 2.    There is no undue delay.

"Delay alone . . . is an insufficient ground to deny an amendment, unless the delay unduly prejudices the non-moving party." *High 5 Games*, 2018 WL 2134038, at *3. Amendments have been permitted even ten years into litigation. *See Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984) (holding district court erred in denying amendment ten years after original complaint when there was no demonstrated prejudice). There is "no presumptive period in which . . . delay becomes 'undue,' the question of undue delay requires that we focus on the movant's reasons for not amending sooner." *Mullin*, 875 F.3d at 151; *see also* 6 Wright, Miller & Kane, *Fed. Practice & Procedure* §1488 (3d ed. Aug. 2019 Update) ("It would be unreasonable to restrict a party's ability to amend to a particular stage of the action inasmuch as the need to amend may not appear until after discovery has been completed or testimony has been taken at trial."). Here, as set forth above, there is no undue delay that would unduly prejudice the Riverside Defendants. This stage of this case is even earlier than that in *High 5 Games*, in which this District Court held:

> Delay is not a serious issue in this case. As has already been explained, the amendment will not cause Defendants to suffer any undue prejudice. The absence of prejudice renders any arguable delay materially irrelevant. Moreover, the motion is not brought on the eve of trial or after Defendants have prevailed on a summary judgment motion.  [D]espite the age of the case, the fact is [plaintiff] brought its motion to amend relatively early in the proceedings-before document discovery was complete; before any depositions were held; before

summary judgment motions were filed; and before any Markman proceeding was held.

*High 5 Games*, 2018 WL 2134038, at *4.

Plaintiff's deliberate approach to adding these affiliated Riverside Defendants does not constitute undue delay, and the Motion should be granted.

### 3.    Granting leave to file the Second Amended Complaint will not be futile.

An amendment is only "'futile' if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Colonial Sur. Co.*, 2019 WL 2137365, at *3. "Thus, in determining futility the same legal standard employed under a Rule 12(b)(6) motion to dismiss is applied." *Id.*

However, "[g]iven the liberal standard for the amendment of pleadings, 'courts place a heavy burden on opponents who wish to declare a proposed amendment futile.'" *High 5 Games*, 2018 WL 2134038, at *4 (quoting *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000)). And the evaluation of futility under Rule 15 does ***not*** contemplate substantive motion practice on the merits of the claims:

> If a proposed amendment is not clearly futile, then denial of leave to amend is improper. This does not require the parties to engage in the equivalent of substantive motion practice upon the proposed new claim or defense; this does require, however, that the newly asserted defense appear to be sufficiently well-grounded in fact or law that it is not a frivolous pursuit.

*Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468-69 (D.N.J. 1990); *see also Rosenzweig v. Transworld Sys., Inc.*, 2016 WL 5106995, at *2 (D.N.J. Sept. 20, 2016). "Effectively, this means that the proposed amendment must be frivolous or advance a claim or defense that is legally insufficient on its face" for the amendment to be denied as futile. *High 5 Games*, 2018 WL 2134038, at *4.

Here, this Court has already held that (i) Relator's Amended Complaint satisfied the heightened pleading standard of Rule 9(b), (ii) the public-disclosure and first-to-file bars did not apply to Relator's claims, and (iii) Relator's FCA claims were constitutional. *See generally* Op., ECF No. 64. The Court's analysis would apply equally to the new Riverside Defendants. In particular, with respect to the Court's decision on the public-disclosure and first-to-file bars, the *Hodge* case "does not directly or indirectly disclose" any of the new Riverside Defendants, "involve[s] a different billing scheme," is "limited only to conduct occurring in Virginia by Virginia clinics," and involves an entity—Urgent Care—that is unrelated to any of the Riverside Defendants.

In addition, Relator has sufficient factual bases to add each of the new Riverside Defendants:

1. ***Riverside Pediatric Group, P.C.*** was specifically identified by Riverside Medical Group, P.C. in its interrogatory responses as the entity primarily responsible for operating the COVID Command

Testing Centers.

2.   ***Riverside Medical LLC*** was also identified by Riverside Medical Group, P.C. as an entity involved in operating the COVID Command Centers—namely, the payment to staff working at the test centers.

3.   ***Riverside Pediatric Group, Inc.*** appears on documents reflecting fraudulently upcoded encounters at the COVID Command Centers.

While the specific involvement of these entities can be more fully explored during discovery, at this stage, these facts are more than sufficient to survive a motion to dismiss, much less to demonstrate that amendment would not be "clearly futile." Relator's Motion should be granted.

### 4.   Amendment will promote judicial economy and effective case management.

Finally, "[j]udicial efficiency and effective case management are matters that can be considered in deciding whether amendment should be allowed." *High 5 Games*, 2018 WL 2134038, at *5 ("In this four-plus-year-old case, one might think these considerations favor denial of the amendment. But we suspect the opposite is true."); *see also Mullin*, 875 F.3d at 157 ("Judicial economy is an equitable consideration that can be considered in deciding whether amendment should be allowed.").

Allowing amendment now—in the immediate wake of the Court's decision largely denying Riverside Medical Group's Motion to Dismiss and before full-

23

fledged discovery commences—makes sense, because "allowing Plaintiff to amend the Complaint to include the proper defendants would not prejudice the opposing parties, but instead would provide the proper defendants an opportunity to prepare their defense and move this action towards a disposition on the merits." *GS Holistic, LLC v. Maya & Jill, Inc.*, 2023 WL 9687510, at *2 (C.D. Cal. Oct. 20, 2023).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should (i) reconsider its September 6, 2024 Order and accompanying Opinion so as not to require Relator to identify its principal as a named party to this action, and (ii) grant Relator leave to file a Second Amended Complaint naming the three additional Riverside Defendants.

Dated: September 20, 2024        By:    *s/ Steven J. Daroci*
                                        Stephen A. Weiss
                                        Justin M. Smigelsky
                                        Steven J. Daroci
                                        SEEGER WEISS LLP
                                        55 Challenger Road
                                        Ridgefield Park, NJ 07660
                                        (973) 639-9100
                                        sweiss@seegerweiss.com
                                        jsmigelsky@seegerweiss.com
                                        sdaroci@seegerweiss.com

                                        *Attorneys for Plaintiff-Relator*
                                        *Resolution NJ LLC*